## GOTTFRIED *v.* MILLER.

*(Circuit Court, E. D. Wisconsin.* May Term, 1881.)

1. LETTERS PATENT—PITCHING BARRELS—INFRINGEMENT.

The transfers of the title to the patent granted to Gottfried & Holbeck May 3, 1864, for a new and improved mode of pitching barrels, traced from the transfers of the original patentees to the transfer of date December 15, 1879, from Stromberg to Gottfried. *Held,* so far as here shown, that Gottfried's present source of title is this transfer from Stromberg of date December 15, 1879; and that, therefore, he cannot prosecute a suit for infringement against one to whom Stromberg sold a machine, November 25, 1872, containing the patented improvement, because privy to Stromberg's prior grant; as Stromberg cannot prosecute a suit against such prior grantee neither can he.

In Equity.

*Banning & Banning,* for complainant.

*Flanders & Bottum,* for defendant.

DYER, D. J., *(orally.)* I have not been able to prepare an opinion in this case, but as counsel desire to know what are the grounds of the judgment of the court, I will state them. This is a bill in equity to restrain the infringement of a patent, No. 42,580, granted to the

complainant and J. F. T. Holbeck for an improved mode of pitching barrels, and for an account and damages.

The patent has been heretofore sustained in this court in a contest between the complainant and parties other than the present defendant. *Gottfried* v. *Philip Best Brewing Co.* 17 O. G. 675.

On the twenty-fifth day of November, 1872, one Stromberg sold to the defendant, Miller, a pitching machine, containing, as it is understood, the patented improvements, which he has since used. The material question in the present controversy relates to the validity of the defendant's title under his purchase from Stromberg, and consequently to his right to use the machine. The determination of this question involves, necessarily, the examination of a series of transactions between various parties, who at different times had or claimed to have some interest in the patent, which transactions constitute the history of the title, and are disclosed by the evidence in the cause.

The patent was granted to Gottfried & Holbeck, May 3, 1864. On the nineteenth day of December, 1870, Gottfried, by written assignment, in consideration of five dollars to him paid, and a royalty to be paid of $10 on every machine to be manufactured by Holbeck, sold and transferred to Holbeck all his interest in the patent and the invention, reserving to himself, however, in the same instrument, the right to revoke the assignment if the royalty reserved should not be paid; and on the third day of January, 1871, Holbeck sold and assigned to Charles F. Smith and Henry C. Comegys an undivided two-thirds of all his right, title, and interest in and to the patent. Then, on the twenty-fifth day of January, 1871, the title to the patent being at that time in Holbeck, Smith, and Comegys, they, by a written assignment, transferred all their right, title, and interest in and to various patents, including the Gottfried & Holbeck patent, to the Barrel-Pitching Machine Company of Baltimore. The assignment contained this provision:

"The same to be held and enjoyed by the said company as fully and entirely as they would have been held by us if this assignment and sale had not been made; with the exception that the said company shall not assign to any one but ourselves any or all the interests in and to the above-named patents, in the proportion as they are now held by us. This assignment to hold good until the dissolution or liquidation of the said company, when the said company shall reassign to us in the same proportions as now assigned by us."

In order, as it would seem, to more completely place in the Barrel-Pitching Machine Company the title to the patents mentioned in the

assignment of January 25, 1871, Holbeck, Smith, and Comegys, on the first day of June, 1871, made a further assignment to the company of their interests in the patents mentioned in the first assignment. This second assignment contained the provision—

"That said corporation shall not assign any, or all, or any part of the interests hereby assigned in said patents, to any other person or persons except the grantors herein named, in proportion to their several and respective interests in the same, as held by them before any assignment to said corporation; and provided, also, that this assignment shall continue in full force until the dissolution of said company, in which event, or in the event of the liquidation of the affairs of said company, the several interests of each grantor in said patents shall, subject to the lawful rights of the creditors of said corporation, be reassigned to each grantor."

Now, as I have already stated, on the twenty-fifth day of November, 1872, which is the next date in chronological order, John H. Stromberg made a sale to the defendant in the present suit of a pitching machine covered by the complainant's patent. On the twenty-fifth day of March, 1875, Gottfried, by written instrument, undertook to revoke and rescind the assignment which he had made to Holbeck on the nineteenth day of December, 1870, for the reason, as recited in the instrument of revocation, that Holbeck had neglected to pay the royalty upon the machines which he had manufactured. On the twenty-seventh day of October, 1875, an agreement was entered into by and between Holbeck and Stromberg whereby Holbeck, in consideration of the sum of $1,000 paid to him, undertook to sell and assign to Stromberg one undivided half of his right and title in and to the patent in question, and it was agreed that they should make articles of copartnership, and that Stromberg should furnish the capital to carry on the business of manufacturing pitching machines as described in the patent. On the ninth day of December, 1875, the directors of the Barrel-Pitching Machine Company resolved that all the right, title, and interest of the company in and to this patent, acquired by the assignment from Smith, Comegys, and Holbeck, should be assigned and conveyed back to those parties for the sum of $500, and it was further resolved that Charles F. Smith, who was the president of the Barrel-Pitching Machine Company, be directed to execute and deliver to Smith, Comegys, and Holbeck an assignment on behalf of the Pitching Machine Company. On the eleventh day of December, 1875, in pursuance of the resolution just mentioned, an instrument was executed which purported to be an assignment from the Barrel-Pitching Machine Company to Smith, Comegys, and Holbeck of all the

right, title, and interest of the company in and to the patent. The attestation clause and signature were as follows:

"In testimony whereof, and in pursuance of a resolution passed by said company on the ninth day of December, 1875, a copy of which is appended hereto, the said Charles F. Smith hath hereto set his hand, as the act of the said company, this eleventh day of December, 1875.

[Signed] "CHARLES F. SMITH,
"President Barrel-Pitching Machine Company."

Then, on the same eleventh day of December, 1875, Smith, for the alleged consideration of $500, granted and assigned to Holbeck & Gottfried all his right and title to the patent, and afterwards, on the seventh day of June, 1876, Comegys transferred to Stromberg all his interest in the patent.

It next appears that on the ninth day of October, 1876, Gottfried, Holbeck, and Stromberg, who are named as jointly interested in the patent, by a certain instrument in writing, appointed one Latrobe, of Baltimore, their attorney, with authority to prosecute suits against infringers of the patent, and to compromise or adjust the · same This instrument contained the following clause:

"And it is understood that all expenses, costs, and charges, including counsel fees, attending the litigation, if any, shall be deducted from the collections aforesaid, and the balance paid over to the parties hereto in the proportion of their interest in the said patents; and particularly it is understood that the said John H. Stromberg shall be paid out of said collections, as fast as made, all moneys that he may have advanced in the prosecution of claims under said letters patent."

This instrument bears the signatures and seals of Holbeck, Gottfried, and Stromberg. On the twenty-fifth day of June, 1878, Gottfried & Holbeck executed a further instrument in writing, by which they, on their part, revoked and countermanded the above-recited power of attorney given to Latrobe, "and all acts and things which shall or may be done by virtue thereof in any manner whatsoever."

It next appears that on the twenty-fourth day of February, 1879, the Barrel-Pitching Machine Company executed to Smith, Comegys, and Holbeck a new assignment of all the right, title, and interest of the company in and to the patent. The execution of the prior assignment by the company is mentioned in this one, and it is stated that the first instrument failed to meet the purposes and carry out the objects of the resolutions of the directors of the company, and it would seem that it was for that reason that this new assignment of February 24, 1879, which was duly executed by the Barrel-Pitch-

ing Machine Company, was made. Thereupon Smith and Comegys, respectively, executed new assignments to Holbeck, and on the fifteenth day of December, 1879, Stromberg, in consideration of the sum of $5,000, assigned to Gottfried all his right, title, and interest in and to the patent, and in and to all claims of every kind or nature for past infringements, and all rights of action arising out of or connected with infringements. This instrument of assignment recited the fact that Stromberg had theretofore disposed of rights and licenses under the patent as a part owner under mesne assignments of the same, and had caused suits to be instituted against infringers, and that it was a part of the consideration of the assignment from him that he should be released from all claims which Gottfried or Holbeck or their assignees might or could have against him for or by reason of any collections theretofore made by him or his attorneys, or against any person or persons to whom he had granted licenses to use the patented improvements, and it was then declared as follows:

"Now, therefore, the said Matthew Gottfried and the said John F. T. Holbeck, the said Holbeck uniting herein for the purpose of carrying out the agreement aforesaid, for and in consideration of the premises, have released and by these presents do hereby release, the said John H. Stromberg from all claim that they, or either of them, might or could have against the said Stromberg for or by reason of any collection he may have made from parties to whom he or his attorneys * * * may have granted licenses to use the said patented improvement, hereby ratifying and confirming all such licenses *and all the acts of the said Stromberg and his attorneys in the premises.* And the said Matthew Gottfried doth hereby covenant and agree that he will save harmless the said Stromberg and his attorneys from all claims that may be made against them, or either of them, for or by reason of any interest which the said Gottfried & Holbeck, or either of them, may have given to any other party in the said letters patent."

It appears, also, that in September, 1873, Charles F. Smith brought a suit against Henry C. Comegys, in the superior court of Baltimore city, upon an indebtedness from Comegys to him, in which an attachment was issued and a seizure made of the shares of capital stock held by Comegys in the Barrel-Pitching Machine Company, which proceedings resulted in a judgment condemning the stock, according to the laws of the state of Maryland, for the satisfaction of Smith's claim, and on the twenty-seventh day of October, 1873, judgment was entered accordingly.

This, I believe is the history of the transactions between these various parties, and is therefore the history of the title of this patent.

Now, it is contended by the learned counsel for complainant that at the time Stromberg sold the machine in question to Miller he had no title which he could convey, and that no conveyance he could then make would enable Miller to use the machine without infringement of the patent. Further, that as the title to the patent in 1875 was vested in the Barrel-Pitching Machine Company, of Baltimore, Holbeck could not and did not by his agreement with Stromberg, convey to or vest in him any interest whatever in the patent.

It is also insisted that as the legal title did not pass from the Barrel-Pitching Machine Company to Holbeck, Smith, and Comegys by virtue of the conveyance made December 11, 1875, because of informality in the execution of that conveyance, Comegys, on the seventh day of June, 1876, had no title or interest which he could convey to Stromberg, and that Stromberg did not at any time have any title to or interest in this patent, and certainly none which enured to the benefit or for the protection of Miller, who had made his purchase long anterior to these transactions. It has been also argued that the title to the patent never passed out of the Barrel-Pitching Machine Company, so that it became vested as a legal title in Holbeck, Smith, and Comegys, until the second assignment from the company, made in February, 1879, and that Smith and Comegys then assigned their entire interest to Holbeck.

It is true that neither the assignment from Holbeck to Stromberg, nor that from Comegys to Stromberg, contained any express warranty of title, and I am inclined to the opinion that counsel for complainant is right in his contention that the legal title which Holbeck and Comegys subsequently acquired did not enure to the benefit of Stromberg. It is also probably true that, since the assignments from Holbeck to Stromberg and from Comegys to Stromberg did not contain an express warranty of title, no implied warranty could arise, because those assignments were not of the entire patent, but were only of the assignors' interest in the patent, whatever that might be. So that, standing upon strict legal principles applicable to after-acquired titles, it would seem there is force in the claim that the subsequent titles which Holbeck and Comegys acquired did not enure to the benefit of Stromberg. I think the court might be constrained so to hold if that were all there is of the case. It appears, however, that after the first assignment was made from the Barrel-Pitching Machine Company, which it may be admitted was

irregularly executed because it was signed only by Charles F. Smith, president, it was understood by the parties that the title had passed. They evidently proceeded to act upon that supposition; for, as we have seen, Smith at once made an assignment of his supposed interest to Gottfried & Holbeck, and Comegys assigned to Stromberg; and then Gottfried, Holbeck, and Stromberg entered into an agreement by which they declared that they were jointly interested in the patent, and agreed upon certain matters in which they declared themselves mutually interested, as fully stated in the agreement; so that it has seemed to me that the second assignment from the Barrel-Pitching Machine Company must be held to have been executed rather to correct what was understood at the time to be a technical defect in the execution of the first conveyance from that company than otherwise.

Now, upon this record we find that not only did these three parties, Holbeck, Gottfried, and Stromberg, in October, 1876, declare themselves to be jointly interested in this patent, but that in December, 1879, they united in the execution of an agreement by which Gottfried & Holbeck declared that they ratified and confirmed all the licenses to use the patented improvement which Stromberg had previously granted, *and all the acts of the said Stromberg.*

But it is argued in the brief of counsel that this had reference to the period when Stromberg was in fact a part owner of the patent. This, however, is not consistent with complainant's claim that Stromberg never was a part owner, and never had any interest in the patent. And in this connection it is a significant fact that if it be held that Stromberg acquired no interest from Comegys, after the execution of the first assignment from the Barrel-Pitching Machine Company, it seems to follow that Gottfried also acquired no interest at that time. Then the question arises, where must we look for the source of Gottfried's title? And in considering that question I have been unable to escape the conclusion that we must look for the source of his title, as he is now seeking to enforce rights against Miller, to the assignment which Stromberg executed to him in 1879; for if Stromberg took nothing from Comegys by the latter's assignment, executed June 7, 1876, then Gottfried took nothing from Smith by virtue of his assignment, executed December 11, 1875, both of which assignments were based on the first transfer from the Pitching Machine Company to Smith, Holbeck, and Comegys; and if all this be so, then the inquiry follows, must not Gottfried, as Stromberg's

grantee, be held privy to Stromberg's previous grant? It will be admitted, I think, that if Stromberg acquired a valid title to or interest in this patent, or a part of it, after his sale of the machine to Miller, he would not be permitted to turn about and sue Miller for infringing the patent by the use of the machine which he had himself sold to Miller. Suppose, for example, that at the time Stromberg made sale of the machine to Miller he had no title, but that afterwards he acquired an interest or title, would he be permitted then to prosecute a suit against Miller for infringement? I think not; and the point appears to be well made by counsel for defendant that, in a suit for infringement, the whole interest in the patent must be represented by the complainants in such suit; so that, if Stromberg had been in fact a part owner of this patent at the time the present suit against Miller was brought, he would have been a necessary party to the suit; and if Gottfried's present title has its source in the grant which Stromberg made to him in 1879, as appears to be the fact, then he is in the position of privy to Stromberg's prior grant, and can no more prosecute a suit against Stromberg's prior grantee than could Stromberg himself.

On the whole, therefore, while it may be technically correct to say that by the transfer from Holbeck to Stromberg and Comegys to Stromberg the latter did not acquire a perfect legal title, nevertheless, when we consider the fact that the complainant in this suit has once declared, in an agreement which he made with Stromberg, that the latter was jointly interested with him in the patent, and in a second agreement ratified and confirmed all licenses which Stromberg had previously granted to use the machine, *and all acts of Stromberg;* and when we consider that in suits which have been previously prosecuted in this court Stromberg was made a party thereto as jointly interested with Gottfried & Holbeck in the patent; and when we find further that if Stromberg acquired no interest in the patent by virtue of the transfer from Comegys to him after the first assignment from the Barrel-Pitching Machine Company to Smith, Holbeck, and Comegys, then Gottfried acquired no title by the transfer to himself and Holbeck from Smith, made December 11, 1875, and that Gottfried's present title has its source in the transfer to him from Stromberg in 1879,—it seems to me that the complainant is in a position where he is as much disabled from prosecuting Miller for infringement as Stromberg would himself be; and, considering the case in all its aspects, I am constrained to hold that the bill should be dismissed

for want of equity. Holbeck has passed out of the case. The bill has been heretofore voluntarily dismissed as to him, so that it is a controversy between Gottfried and Miller alone.

The attempted revocation by Gottfried in March, 1875, of the assignment of the patent which he had granted to Holbeck in December, 1870, cannot, I think, in view of all that subsequently occurred with the apparent acquiescence of Gottfried, be held to restore the latter's original title.

NOTE. The decree entered by the circuit court in pursuance of the above decision has been, at the present term of the supreme court of the United States, affirmed by that court.